[Civ. No. 36631. Second Dist., Div. Five. Dec. 10, 1971.]

EDWIN RYLAND TAYLOR, as Executor, etc.,
Plaintiff and Respondent, v.
DORIS KISTLER BELL, Defendant and Appellant.

**COUNSEL**

Doris Kistler Bell, in pro. per., for Defendant and Appellant.

Gerald S. Johnson for Plaintiff and Respondent.

**OPINION**

**AISO, J.**—Appeal from a judgment holding defendant Doris Kistler Bell liable on five promissory notes executed by her in favor of Joseph L. Taylor, together with prejudgment interest and costs of suit, less $2,500 for the fair value of her services in managing certain real properties for Taylor. Taylor died after the notes were delivered to him and plaintiff is the executor of his estate.

Defendant, who tried the case in propria persona and who prosecutes this appeal in similar capacity,[1] does not attack the judgment on its merits.

---

[1] The notice of appeal was filed by attorney Theodore S. Tabah and he filed an application for an order extending time to file notice designating the clerk's transcript and to prepare order in this court. Whether thereafter there was a formal substitution of defendant in propria persona in place of said counsel does not appear in the record and remains unexplained. Her brief is signed in propria persona and she appeared *pro se* on date of oral argument.

Her complaint on appeal is that the trial court, sitting without a jury, continued trial proceedings on July 18, 1969, without good cause, depriving her of the "right to proceed under appropriate provisions of the Code of Civil Procedure (*Manha* v. *Union Fertilizer Co.,* 151 Cal. 581, 584, 585 [91 P. 393]; *Kalmus* v. *Kalmus,* 103 Cal.App.2d 405 [230 P.2d 57]; Code of Civil Procedure, §§ 581 (3), 594 (1), 595.4, 596.)"

Defendant had changed counsel at least once prior to the date of trial, which was set for March 3, 1969. On that date, she again changed counsel, and over plaintiff's objection the court continued the trial to March 24, 1969, with the admonition: "No further continuances on basis of substitution of attorney."

On March 24, 1969, the case was again continued upon defendant's motion to May 20, 1969, for trial.

On May 20, 1969, defendant substituted herself in propria persona for the lawyer who had become counsel of record on March 24, 1969, and the trial was commenced. The court called defendant as its witness and she was interrogated by the court and plaintiff's counsel. Defendant then called her mother, Mrs. Maude G. Kistler, and examined her; thereafter, defendant took the witness stand and testified on her own behalf. The court, being of the opinion that defendant should be given full opportunity to produce all available witnesses and evidence she could muster to prove the affirmative defense set up in her answer,[2] informed her of her right to subpoena witnesses and inquired how much time she would need. Defendant asked for three weeks, and the court continued further trial proceedings to June 6, 1969.

On June 6, 1969, defendant called and put on the testimony of 17 witnesses, including herself. She then called for Lloyd Taylor. Plaintiff's counsel advised the court that Lloyd Taylor was not present, that he was the son of the decedent and a brother of plaintiff executor, that he was served with subpoena on Saturday evening (May 31, 1969), but as a grip for Columbia Broadcasting System he was committed to go to Phoenix or Tuscon, Arizona, at 6 a.m. Monday (June 2, 1969), and had left since it would otherwise mean loss of his job. The court offered to continue the case if that witness's testimony were vital to defendant's case and sought to ascertain, very courteously and meticulously (reporter's transcript pp. 191-201), the substance and materiality of the testimony she anticipated

---

[2]In substance it was that the notes evidenced advances of capital to defendant for her capital contribution to a series of joint real estate ventures with decedent; that these had been terminated by a division of properties in kind; and that the notes had been cancelled.

eliciting from Lloyd Taylor, but she answered only in terms of irrelevant generalities. She then asked for a continuance to bring in a different witness. The court asked her, "Why didn't you produce her here today?" Her reply was, "Well, I was going to but I couldn't get everything done." Thereupon, the request for continuance was denied. The testimony of John L. Luskin was received by way of stipulation. Plaintiff called two rebuttal witnesses and rested. Defendant put on a rebuttal witness and rested. The case was argued and was ordered "to stand submitted."

On June 12, 1969, the court upon its own motion ordered the submission vacated and set the cause down for further hearing on July 18, 1969, *to enable defendant to put on the testimony of Lloyd Taylor,* who was not present on June 6, 1969. The order also provided that if defendant could not re-serve said witness because of his being out of state, the cause would be continued further until the witness returned.

Defendant admits in her opening brief (p. 20) that the clerk of the superior court stated in a notice (filed July 15, 1969): "This is to advise the request for continuance of trial by [plaintiff's counsel] is granted by the Court; on July 18, 1969, trial will be ordered continued to August 28, 1969 at 9:30 AM. Counsel for plaintiff to give notice." "Counsel for plaintiff/respondent did serve and file said notice of continued trial date on Thursday, July 17, 1969." The reason for the grant of extension was that plaintiff's counsel had advised the court that Lloyd Taylor would not be able to return from Arizona by July 18.

On July 18, 1969, plaintiff's counsel, defendant, and three witnesses other than Lloyd Taylor were nevertheless in court. The court informed the parties, "Your case has been continued." It formally stated, "Taylor versus Bell is continued to August 28, 1969 at 9:30 for further proceedings in this matter." Defendant then asked that the witnesses subpoenaed for that date "be bound over." One witness, Thomas Depuy, informed the court that he would be out of the country on August 28, 1969. She asked if his testimony could be taken that day, but the court considered it a question of law and advised her that it could not answer. It asked defendant if she were willing to excuse him. The witness offered to "give a document statement to [defendant] pertaining to three questions." Defendant replied, "That will be fine." The court commented that it might not meet the rules of competency. Defendant then inquired: "Does that give me the privilege of taking a deposition?" The court replied, "You will have to ask a lawyer, ma'am." Thereupon, defendant refused to excuse him, but upon the court's ascertaining that he had his "reservations for Europe," defendant indicated she was agreeable to his being excused. Two witnesses, Justine Adamsak

and Esther Franklin, were ordered to return to the court on August 28, 1969, at 9:30 without further order.

On August 28, 1969, trial was resumed. Lloyd Taylor who voluntarily appeared on this date, was examined as an adverse witness by the defendant. His testimony added nothing material to defendant's case. Defendant did not call either Justine Adamsak[3] or Esther Franklin, but she did call and elicit the testimony of Joseph Pickering and Frank Johnson as her witnesses. Both sides rested, the cause was reargued, and again submitted for decision. Later the same date, the court announced its intended decision by minute order. The findings of fact and conclusions of law and the judgment were filed on October 28, 1969, and the judgment was entered on October 29, 1969.

We conclude that the defendant's contention upon this appeal lacks merit for a number of reasons. To begin with, we note that assuming that defendant originally subpoenaed Lloyd Taylor in good faith believing that his testimony was material to proving her defense, the order of continuance made on July 18, 1969, was made by the court out of an abundance of caution against depriving her of his testimony; it was to accommodate her and her witness—it was not a continuance for the benefit of plaintiff or an accommodation of a plaintiff's witness.

■ As to the June 12, order, we believe that a trial court, sitting without a jury, not only may call witnesses upon its own motion during trial (Evid. Code, § 775), but it has the inherent power to reopen the case for the taking of additional evidence even after submission of the case where it determines in its discretion that the interests of justice require doing so.

Defendant, moreover, has shown no detriment or prejudice resulting from the July 18, 1969, order of continuance.

■ We deal also with a situation which Witkin, the leading text writer on California law, has succinctly assessed as follows: "The factors which influence the granting or denying of a continuance in any particular case are so varied that the trial judge must necessarily exercise a broad discretion. On an appeal from the judgment (the order itself being nonappealable) it is practically impossible to show reversible error in the *granting* of a continuance." (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 7, p. 2865.)

The two cases cited by defendant, *Manha* v. *Union Fertilizer Co.* (1907)

---

[3] In her argument on her motion for a new trial based upon numerous grounds, she did mention that this witness had become hostile by August 28.

151 Cal. 581, 584, 585 [91 P. 393] and *Kalmus* v. *Kalmus* (1951) 103 Cal. App.2d 405 [230 P.2d 57], merely state the rule now embodied in that part of rule 224, California Rules of Court, which reads: "No continuance before or during trial in civil cases shall be granted except upon an affirmative showing of good cause therefor." █ Whether the rule is properly applied depends upon the facts shown by the record in a particular case.

Neither section 581, subdivision 3, nor 594, subdivision 1, Code of Civil Procedure, has any application to this case. Plaintiff's attorney was present in court on July 18, 1969, and whether his client was personally present at this civil proceeding is immaterial. █ "In civil cases personal appearance by a party is not essential; appearance by an attorney is sufficient and equally effective." (1 Witkin, Cal. Procedure (2d ed. 1970) Jurisdiction, § 123, p. 652.) █ In fact, in a civil litigation the court has no inherent power to order the physical presence of a party before it, except as a witness, at any stage of the litigation. (*Silvagni* v. *Superior Court* (1958) 157 Cal. App.2d 287, 291 [321 P.2d 15].)

Since the motion for continuance was not, as previously noted, strictly one for an adverse party's benefit, the applicability of sections 595.4 and 596 of the Code of Civil Procedure cited by defendant is open to question. █ Be that as it may, the statutory law does not exclusively control the grounds for a continuance. (4 Witkin, Cal. Procedure (2d ed. 1971) Trial, § 6, p. 2864.) █ The requirement of an affidavit under section 595.4, not being jurisdictional in nature, may be excused by the trial court in its discretion and other proof, including oral representations of counsel, in open court, has been held to be adequate. (*Friedman* v. *Knecht* (1967) 248 Cal.App.2d 455, 460, 461 [56 Cal.Rptr. 540]; *Larson* v. *Solbakken* (1963) 221 Cal.App.2d 410, 430 [34 Cal.Rptr. 450].) █ The question, moreover, cannot be raised for the first time upon appeal. (*Bristol Convalescent Hosp.* v. *Stone* (1968) 258 Cal.App.2d 848, 862 [66 Cal. Rptr. 404]; cf. *Pacific Gas etc. Co.* v. *Taylor* (1921) 52 Cal.App. 307, 310 [198 P. 651].)

█ Assuming arguendo that section 596 and its provisions relative to depositions is applicable, the record reflects that she waived that right by excusing witness Thomas Depuy, when it was ascertained that he had reservations for taking a trip to Europe. The court's refusal to advise her whether she had a right to take a deposition was not error. █ While it is the duty of a trial judge presiding over the trial of a case being conducted by a layman or a laywoman in propria persona to see that a miscarriage of justice does not occur through inadvertence, he is not required to act as counsel for that party in the presentation of evidence. (*Lombardi* v. *Citizens Nat. Trust etc. Bank* (1955) 137 Cal.App.2d 206, 209 [289

P.2d 823].) A lay person, who is not indigent, and who exercises the privilege of trying his own case must expect and receive the same treatment as if represented by an attorney—no different, no better, no worse. (*Doran* v. *Dreyer* (1956) 143 Cal.App.2d 289, 290 [299 P.2d 661].)

 Finally, as plaintiff points out, defendant did not object to the continuance in the trial court so that she may not claim it as error on appeal. (*Myers* v. *McDonald* (1885) 68 Cal. 162, 166-167 [8 P. 809]; Civ. Code, § 3516; cf. *Guardianship of Peterson* (1944) 64 Cal.App.2d 473, 477-478 [149 P.2d 65].) If there was error, it was only procedural in nature. (*Larson* v. *Solbakken, supra,* 221 Cal.App.2d 410, 429.) Even assuming arguendo that the order of continuance was erroneous, no miscarriage of justice resulted which would justify a reversal. (Cal. Const., art. VI, § 13; *Larson* v. *Solbakken, supra,* at pp. 429, 430.)

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied December 23, 1971, and appellant's petition for a hearing by the Supreme Court was denied February 3, 1972.